UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

C.D. MOMBER SALES, LLC,

      Plaintiff,

                                    Case No. 1:25-cv-1265

v.

                                    Hon. Hala Y. Jarbou

SPARTA TOWNSHIP, et al.,

      Defendants.

_____/

## **OPINION**

This case concerns a parcel of land caught between two municipal entities.  The land sits in Sparta Township, Michigan, and is owned by Plaintiff C.D. Momber Sales, LLC.  C.D. Momber wants the land to be part of the Village of Sparta (rather than the Township), but the Village's petition for annexation was denied by the Kent County Board of Commissioners.  C.D. Momber now sues Defendant Sparta Township and several of its officials for their alleged role in frustrating the Village's annexation attempt.  C.D. Momber alleges that Defendants deprived it of procedural due process under the Fourteenth Amendment, violated its right to petition the government under the First Amendment, engaged in an unconstitutional taking of its property under the Fifth Amendment, and engaged in a civil conspiracy under 42 U.S.C. § 1983.  Defendants now move to dismiss all of C.D. Momber's claims (ECF No. 16).  For the reasons explained below, the Court will grant the motion to dismiss.

## **I. BACKGROUND**

This lawsuit centers on a 58-acre property ("the Property") located in Sparta Township, just outside of the Village of Sparta.  (Compl. ¶ 8, ECF No. 1.)  In 2009, the Township and the Village entered into a contract that tangentially concerned the Property.  (*See* Act 425 Agreement, ECF No. 12-3, PageID.104.)  A Michigan statute authorizes municipal entities to enter "Act 425"

agreements to transfer property from one municipality to another.  *See Clam Lake Township v. Dep't of Licensing & Regul. Affs./State Boundary Comm'n*, 902 N.W.2d 293, 296 (Mich. 2017); Mich. Comp. Laws §§ 124.21–124.30.  Under the 2009 Act 425 agreement, the Township transferred an area of land to the Village; in exchange, the Village agreed to not annex any Township land adjacent to the transferred land.  (*See* Act 425 Agreement 2.)  The Property is part of the adjacent land that the Village was barred from annexing.  C.D. Momber subsequently bought the Property, unaware of the Act 425 agreement.  (*See* Compl. ¶ 12.)

C.D. Momber wants the Village of Sparta to annex the Property because it believes annexation will increase the Property's value.  (*See id.* ¶ 22.)  Under Michigan law, a village can alter its boundaries by petitioning the relevant county board of supervisors.  *See* Mich. Comp. Laws § 74.6.  At C.D. Momber's request, the Village submitted a petition to the Kent County Board of Supervisors in February of 2025 requesting permission to annex the Property.  (*See* Annexation Petition, ECF No. 12-2, PageID.99.)  The Township opposed the petition on the basis that annexation was barred by the Act 425 agreement.  (Compl. ¶ 17.)  The Kent County Administrator agreed with the Township, and did not forward the petition to the Board of Commissioners.  (*See* 3/5/2025 Email, ECF No. 12-4, PageID.115.)  C.D. Momber then brought this lawsuit against Sparta Township and seven township officials: Jason Bradford, Barb Johnson, Bill Goodfellow, and Rob Steffens, all trustees of Sparta Township; Dale Bergman, the Township Supervisor; Marcy Savage, the Township Clerk; and Ashley Johnson, the Township Treasurer. (Compl. ¶ 9.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and

2

the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

**B. Rule 12(b)(1)**

Article III of the Constitution grants federal courts the authority "to decide 'Cases' or 'Controversies' between litigants." *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 536 (6th Cir. 2021) (quoting U.S. Const. art. III, § 2). If a plaintiff lacks standing to sue, then a case or controversy does not exist, and the court lacks jurisdiction. *See Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012). "The party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing, a plaintiff must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Murray*, 681 F.3d

3

at 748 (quoting *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007)).  Because standing is a jurisdictional issue, it "must be addressed as a threshold matter."  *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019).

Although Defendants' motion to dismiss is styled as one under Rule 12(b)(6), they argue in their reply brief that C.D. Momber lacks standing, so the Court will address this argument as if it were contained in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.[1]  The standard for evaluating a Rule 12(b)(1) motion depends on the nature of the "attack" on subject matter jurisdiction.  A "facial attack" on subject matter jurisdiction "merely questions the sufficiency of the [complaint]."  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  The Court accepts the plaintiff's well-pleaded allegations as true and asks whether subject matter jurisdiction exists based on the complaint.  *Id.*  No presumption of truth applies in a "factual attack" on subject matter jurisdiction.  *Id.*  Factual attacks challenge the existence of jurisdiction based on facts outside the pleadings.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Here, because Defendants argue that the complaint is insufficient to establish standing, the Court will construe their attack as facial.

### III. ANALYSIS

#### A. Standing

Defendants argue that C.D. Momber lacks standing to bring suit against them because they did not cause its alleged injury and cannot redress it.  Defendants note that it was Kent County, not the Township, that refused to consider the Village's annexation petition.  They cite *Turaani v. Wray* for the proposition that "[a] third party's 'legitimate discretion' breaks the chain of

---

[1] Because Defendants raised standing as a new issue in their reply brief, they note that they would not oppose C.D. Momber filing a surreply.  C.D. Momber has not moved for permission to file a surreply, so the Court will address the standing issue without additional briefing.

constitutional causation."  988 F.3d 313, 317 (6th Cir. 2021) (quoting *ASARCO Inc. v. Kadish*, 490

U.S. 605, 615 (1989)).  In other words, Defendants did not cause C.D. Momber's alleged injury if

they merely influenced Kent County—rather than "cajole[d], coerce[d], or command[ed]" it—to

deny the petition.  *Id.* at 316.  Similarly, a judgment against Defendants would not remedy C.D.

Momber's injury because such a judgment would not necessarily cause Kent County to address

the annexation petition.

But this argument understates the role that the Township allegedly had in the deprivation

of C.D. Momber's rights.  The Kent County Administrator refused to forward the annexation

petition to the County Board based on the belief that the Act 425 agreement forecloses annexation.

(3/5/2025 Email, PageID.115.)  In other words, the Administrator concluded that the County lacks

any discretion in deciding the petition as long as the Township intends to enforce the Act 425

agreement.  Because the Township's decision to execute and enforce the Act 425 agreement caused

the County to "react in predictable ways," the County's actions do not sever the causal chain; the

Township's decision is ultimately the root of C.D. Momber's alleged injury.  *Dep't of Com. v. New

York*, 588 U.S. 752, 768 (2019).  Similarly, a judgment against the Township will likely redress

C.D. Momber's alleged injuries because the Township declining to enforce the Act 425 agreement

would presumably cause the County to consider the annexation petition on the merits.[2]

However, the fact that C.D. Momber has standing to sue the Township itself does not entail

that it has standing to sue each individual defendant.  *See Murthy v. Missouri*, 603 U.S. 43, 61

(2024) ("[P]laintiffs must demonstrate standing for each claim that they press against each

defendant . . . ." (cleaned up)).  Although the Act 425 agreement was signed by Defendant

---

[2] Although the County is not guaranteed to approve the petition in the absence of an objection from the Township, that fact does not foreclose redressability.  Insofar as C.D. Momber asserts the denial of a procedural right—i.e., the right to have the County consider the annexation petition—it can establish redressability without showing that the procedure itself will produce a favorable outcome.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 n.7 (1992).

Bergman (*see* Act 425 Agreement 6), that does not establish that Bergman is presently enforcing the agreement and thus that a judgment against Bergman would redress C.D. Momber's injuries. And the complaint contains almost no allegations regarding the other defendants—merely stating their titles does not clarify their actual involvement in the allegedly injurious conduct.  C.D. Momber attempts to rectify this by attaching additional exhibits to its response brief, but the Court may not consider such exhibits in resolving this motion.

In short, C.D. Momber has failed to allege standing regarding its claims against the individual defendants, and those claims will be dismissed.

### B. Procedural Due Process Claim

Turning to the merits, C.D. Momber first contends that the Township violated its due process rights by entering the Act 425 agreement and thereby preventing Kent County from considering the Village's annexation request.  "The Fourteenth Amendment's Due Process Clause bars 'any State' from 'depriv[ing] any person of life, liberty, or property, without due process of law.'"  *Lifestyle Cmtys., Ltd. v. City of Worthington*, 165 F.4th 1013, 1026 (6th Cir. 2026) (alteration in original) (quoting U.S. Const. amend. XIV, § 1).  "To succeed on a procedural-due-process claim, a plaintiff must show: (1) 'deprivation by state action of a protected interest in life, liberty, or property,' and (2) 'inadequate state process.'"  *Id.* (quoting *Reed v. Goertz*, 598 U.S. 230, 236 (2023)).  "Protected property interests are defined by 'existing rules or understandings that stem from an independent source such as state law.'" *Id.* at 1027 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

The Township contends that C.D. Momber was not deprived of any property interest.  C.D. Momber argues that it was deprived of two rights arising under state law: "the right to petition the government for annexation of [its] property and the right to a hearing on the petition before the Kent County Board of Commissioners."  (Pl.'s Resp. 10, ECF No. 24.)  These rights cannot

themselves serve as property interests because "[a] person cannot have a property interest in a procedure itself." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 832 (6th Cir. 2009) (citing *Richardson v. Township of Brady,* 218 F.3d 508, 518 (6th Cir. 2000)) (plaintiff had no property interest in "the City Council's approval of the zoning ordinance, the amendment to the City's Master Land Use Plan, or approval of the final site plans"). Thus, denying C.D. Momber access to the petition procedure would only constitute a procedural due process violation if the petition procedure protected some underlying property interest.[3]

No such violation occurred here because C.D. Momber's asserted underlying interest in being annexed by the Township is not a valid property interest. For due process purposes, "[a] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 856 (6th Cir. 2012) (cleaned up). Michigan law provides that when a village seeks to annex territory, "it shall be the duty of the [county] board of supervisors to order and determine as to whether the prayer contained in the petition or any part thereof shall be granted." Mich. Comp. Laws § 74.6. This statute does not appear to entitle property owners to any particular result regarding the petition. Indeed, the Michigan Supreme Court has recognized that "[n]o city, village, township or person has any vested right or legally protected interest in the boundaries of such governmental units." *Midland Township v. Mich. State Boundary Comm'n*, 259 N.W.2d 326, 337 (Mich. 1977). In *Midland Township*, the Court relied on a U.S. Supreme Court case holding that a state's decisions regarding the territorial boundaries of municipalities (and the concomitant tax consequences) cannot give rise to a procedural due process claim because such decisions "rest[]

---

[3] If C.D. Momber is understood as asserting that the Township deprived it (without due process) of its First Amendment right to petition the government, that argument fails because there was no underlying violation of the Petition Clause. *See infra* Part III.D.

7

in the absolute discretion of the state." *Id.* (quoting *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178 (1907)).  Thus, because decisions regarding annexation are entirely discretionary, C.D. Momber has no property interest in the approval of the annexation petition.

C.D. Momber attempts to distinguish *Midland Township* by noting that it was an appeal of a decision by the State Boundary Commission; by contrast, "[t]he Annexation Petition in this case is not within the jurisdiction of the State Boundary Commission," and C.D. Momber "is entitled to due process under another statute," i.e., Mich. Comp. Laws § 74.6.  (Pl.'s Resp. 15.)  However, this argument is unavailing.  The Court's holding in *Midland Township* is not explicitly or implicitly limited to the context of State Boundary Commission appeals; rather, the Court was expressing a general principle of state law to support the constitutionality of the statute at issue there.  And C.D. Momber's assertion that a specific statute provides procedural protections in this situation is immaterial.[4]  The fact that state law provides for a given procedure does not entail that some property right is at stake for due process purposes.  *See Shango v. Jurich,* 681 F.2d 1091, 1101 (7th Cir. 1982) ("Constitutionalizing every state procedural right would stand any due process analysis on its head.")

Insofar as C.D. Momber means to contend that the underlying property right is the right to access a particular process—i.e., the petition process in § 74.6—this contention suffers from the problem identified above: the right to access a process is not itself a property right.  *Taylor Acquisitions*, 313 F. App'x at 832.  In other words, C.D. Momber's due process claim must bottom out at some concrete property interest; it cannot be processes all the way down.  *See Shango*, 681 F.2d at 1091 ("If a right to a hearing is a liberty [or property] interest, and if due process accords

---

[4] The Township also points out that while § 74.6 provides the *Village* the right to file annexation petitions, the statute does not clearly provide any procedural rights to individuals who wish for their property to be annexed.  But resolving this issue is unnecessary because even if § 74.6 provided such a right to individuals (or here, limited liability companies), that fact would not create an associated due process right.

the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him with a hearing.").

In sum, because C.D. Momber fails to identify any valid property interest, it fails to state a due process claim.

### C. Petition Clause Claim

Next, C.D. Momber brings a claim for a violation of its right to petition the government. "The Petition Clause of the First Amendment forbids Congress from 'abridging the . . . right of the people . . . to petition the Government for a redress of grievances.'" *Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006) (quoting U.S. Const. amend. I).  C.D. Momber argues that the Township's execution and enforcement of the Act 425 agreement prevented Kent County from considering the annexation petition and thereby denied C.D. Momber the right to petition the County.  The Court assumes that the petition to annex the Property receives protection under the Petition Clause.  *See EJS Props.*, 698 F.3d at 863 ("We have . . . held more generally that seeking redress from a government official qualifies as petitioning, and a zoning request certainly qualifies under this standard.").  But C.D. Momber cites no case law supporting the notion that the Township could violate the Petition Clause by merely entering into the Act 425 agreement or opposing the annexation attempt.  It is true that the creation and enforcement of the Act 425 agreement indirectly limited Kent County's consideration of the annexation request.  But the Township's actions did not prevent C.D. Momber from voicing its concerns to Kent County, and "[a] citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also EJS Props.*, 698 F.3d at 864 (finding "no support for the proposition that the right to meaningful access is the same as the right to meaningful process").  Thus, C.D. Momber has not stated a Petition Clause claim.

### D. Takings Claim

C.D. Member's final constitutional claim is for the uncompensated taking of its property. "The Fifth Amendment's Takings Clause, applicable to the States through the Fourteenth Amendment, provides: 'nor shall private property be taken for public use, without just compensation.'" *Lifestyle Cmtys.*, 165 F.4th at 1021 (quoting U.S. Const. amend. V).  A claim under the Takings Clause may be based on a "physical taking"—i.e., when the government takes physical ownership of the property—or a "regulatory taking"—i.e., when the government regulates the property in a way that significantly reduces its value. *Id.* at 1021–22.  Regardless of the type of taking, "no takings claim can proceed without a valid property interest." *Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998 v. City of Mentor*, 11 F.4th 462, 469 (6th Cir. 2021).

Defendants argue that C.D. Momber has no valid property interest that was impaired by the County's failure to grant the annexation petition.  It is important to note that "property rights protected by takings law are broader (or at least not coextensive with) the property rights protected by due process." *Id.* at 469.  Thus, when a state uses its discretion to deny a benefit to a plaintiff, the plaintiff lacks a property interest for due process purposes but may have a property interest for purposes of a takings claim. *See id.* at 469–70.  For example, "courts routinely consider takings claims . . . that arise from a local authority's denial of rezoning, variances, or land-use permits," *id.* at 469, even though the discretionary nature of such decisions forecloses any due process claims.  Accordingly, the fact that C.D. Momber fails to state a due process claim based on the lack of a property interest does not necessarily entail that it fails to state a takings claim.[5]

---

[5] It is also not dispositive that the Act 425 agreement predates C.D. Momber's acquisition of the Property. *See Lifestyle Cmtys.*, 165 F.4th at 1022 ("'[A] valid takings claim will not evaporate just because a purchaser took title after' a land-use restriction 'was enacted.'" (quoting *Murr v. Wisconsin*, 582 U.S. 383, 398 (2017)).

In *Andrews*, the Sixth Circuit did not determine precisely what kind of property interest is necessary to state a takings claim. *See id.* at 473. But it provided some guidance on the issue. In essence, a plaintiff can only state a takings claim when the defendants' conduct deprives the plaintiff of an interest that was inherent in its right to own the underlying property at issue. *See id.* at 472. In other words, the rights protected by the Takings Clause are those contained within the proverbial "bundle of rights" that a property owner holds. *Id.* at 470 (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027 (1992)). Thus, a court must examine "background principles of the State's law of property" to determine whether the plaintiff had a right to the benefit that the state has denied it. *Id.* (quoting *Lucas*, 505 U.S. at 1029). If the plaintiff lacked such a right, it "cannot complain that the State has taken a use interest that was not a part of the [plaintiff]'s title to begin with." *Id.*

Here, C.D. Momber provides no reason to think that Michigan property owners have traditionally possessed the right to be annexed by a municipality of their choosing. As discussed above, *Midland Township* entails the opposite—if the legislature has plenary power to determine municipal boundaries, it can hardly be said that property owners have a right to any specific configuration of those boundaries. Thus, the County's refusal to annex the Property did not deprive C.D. Momber of any property interest.

And even if C.D. Momber asserted a valid property interest, it has not established that a taking occurred. Because the Township has not physically acquired the Property, C.D. Momber's claim must be considered one for a regulatory taking. "[I]f a regulation does not deprive a property owner of all economically beneficial use of the property"—and C.D. Momber does not allege that the lack of annexation eliminates all beneficial uses—"a taking still may be found based on a complex of factors" known as the *Penn Central* factors. *Lifestyle Cmtys.*, 165 F.4th at 1022

11

(quoting *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017)).  "These factors include: (1) 'the economic impact of the regulation,' (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations,' and (3) 'the character of the governmental action.'"  *Id.* (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).  C.D. Momber alleges that Kent County's denial of the annexation petition "significantly reduc[ed] the value of [the] Property," caused it to "los[e] profits which could be earned through development," and prevented it from accessing the Village's "water and sewer service and development opportunities under [the Village's] Code of Ordinances."  (Compl. ¶¶ 7, 22, 24.)  These allegations are too vague to establish any economic impact or interference with investment-backed expectations.  C.D. Momber also claims damages "exceed[ing] $3,800,000" (Compl. ¶ 4), but it provides no explanation for this number.  Thus, C.D. Momber has essentially made no showing as to the first two *Penn Central* factors.  The third factor also does not weigh in C.D. Momber's favor because the government action here (i.e., the lack of annexation) cannot "be characterized as a physical invasion." *Lifestyle Cmtys.*, 165 F.4th at 1024 (quoting *Penn. Cent.*, 438 U.S. at 124).  In sum, C.D. Momber fails to allege a regulatory taking.

### E. Conspiracy Claim

C.D. Momber also asserts a claim for civil conspiracy under 42 U.S.C. § 1983.  "A claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury."  *Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014). Because C.D. Momber has not stated an underlying constitutional claim, it also fails to state a civil conspiracy claim.

### F. Leave to Amend

In its response to the motion to dismiss, C.D. Momber states that if "the Court finds that any of the relevant factual allegations stated above must be included [in] the First Amended

Complaint . . . Plaintiff requests leave to file a Second Amended Complaint to add any required material."  (Pl.'s Resp. 22.)  However, "[a] request for leave to amend almost as an aside, to the district court in a memorandum," does not qualify as a motion to amend.  *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (cleaned up).  The Court's local rules also require C.D. Momber to file a proposed amended pleading, *see* W.D. Mich. LCivR 5.7(f), which it has not done.  If C.D. Momber wishes to amend its complaint, it can file a proper motion to do so.  *See Lothamer Tax Resol., Inc. v. Kimmel*, No. 1:25-CV-579, 2025 WL 3481868, at *8 (W.D. Mich. Dec. 2, 2025).

## IV. CONCLUSION

C.D. Momber has sufficiently alleged standing for its claims against the Township, but not for its claims against any individual defendant.  Additionally, C.D. Momber fails to state a claim under the Due Process Clause, the Takings Clause, the Petition Clause, or 42 U.S.C. § 1983.  Accordingly, the Court will grant Defendants' motion and dismiss C.D. Momber's complaint.  An order and judgment will issue consistent with this Opinion.

Dated: March 16, 2026                          /s/ Hala Y. Jarbou
                                               HALA Y. JARBOU
                                               CHIEF UNITED STATES DISTRICT JUDGE